**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TODD CHRISLEY and JULIE CHRISLEY,

    Plaintiffs,

v.

BALCH & BINGHAM LLP and CHRIS J. ANULEWICZ,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

Jury Trial Demanded

---

## COMPLAINT

---

Come now the Plaintiffs, TODD and JULIE CHRISLEY, and for their Complaint would show as follows:

## INTRODUCTION

1. This case is about a law firm and a partner who put their own interests ahead of their clients' lives.

2. Balch & Bingham LLP ("Balch") held itself out as capable of defending Todd and Julie Chrisley in one of the most consequential federal criminal prosecutions in the country. It was not. Chris Anulewicz, the Balch partner who took the lead on the Chrisleys' defense, had no meaningful criminal defense experience. Balch knew this—or should have—and it

1

permitted him to handle the matter anyway, because the Chrisley name meant money, publicity, and the kind of high-profile notoriety that brings in business.

3.  What that representation meant to Anulewicz personally is illustrated by the fact that, while he was supposed to be managing this complex federal defense, he found time to steer the Chrisleys into a $75,000 investment in his brother-in-law's startup food truck business—exploiting his position as their attorney to benefit himself and his family while neglecting his duty to them.

4.  The result of Defendants' conduct was a catastrophic, unforced error that sent two people to federal prison for crimes they would never have been convicted of had their lawyers done their jobs.

5.  Before any criminal investigation existed, the Georgia Department of Revenue conducted an unlawful, warrantless search of the Chrisleys' warehouse. That illegal search launched the entire federal case. Virtually every document the government used at trial traced back to it. The district court agreed the search was illegal and suppressed the physical documents. But Anulewicz—operating without supervision from Balch—never moved to suppress the derivative evidence: the emails, bank records, and financial documents that federal agents obtained because of what they learned from the illegal search.

6. Over two years after the first successful suppression motion, Defendants finally attempted to suppress the derivative evidence. The deadline had long passed. The motion was denied as untimely.

7. The consequences of Defendants' failures were catastrophic. The derivative documents that Defendants failed to challenge formed the core of the government's case. Without them, there was no prosecution. With them, Todd and Julie Chrisley were convicted on every count. They served time in federal prison. They were separated from each other and from their children. They lost their television show and endorsement deals, costing them more than $25 million in income. Their reputations were destroyed. They have spent millions more in appeals and post-conviction proceedings, all of it an attempt to undo harm that a single timely motion would have prevented. A lawyer with actual criminal defense competence, supervised by a firm that took its professional obligations seriously, would never have let this happen.

8. This was not a close call on a hard legal question. It was a failure of basic competence that Balch, as an institution, allowed to happen.

9. Defendants knew the warehouse search was illegal. They had won a suppression motion on it. The federal court "easily f[ound]" a Fourth Amendment violation. The government conceded the point. The law of fruit of the poisonous tree is not obscure. The pretrial motion deadline is not a secret.

Connecting those dots is the minimum that any criminal defense lawyer—at any firm—is expected to do.

10. Anulewicz failed to do it, and Balch failed to make sure he did. When Defendants finally tried to raise the issue, both the district court and the Eleventh Circuit refused to consider it because it was untimely. That procedural default wiped out the Chrisleys' ability to obtain relief on direct appeal and forecloses relief in any future proceeding. The damage is permanent. Defendants made it permanent.

11. The conduct described in this Complaint reflects a total failure of oversight by Balch. The firm permitted a lawyer with no real criminal defense experience to lead a high-stakes federal prosecution, provided him no meaningful supervision, and allowed him to hold himself out as competent to handle the case.

12. Balch did this because the Chrisley representation was valuable— lucrative and high-profile—and the firm was not about to turn it away. So it let Anulewicz operate without the guardrails that would exist at any firm that took its professional obligations seriously. The results speak for themselves.

13. The initial motion to suppress the warehouse evidence (which succeeded) was filed only because a Balch associate—unable to get Anulewicz to act and unwilling to watch the issue disappear—went around him directly to Todd Chrisley to flag that Anulewicz had dismissed the idea of filing any

suppression motion at all. The Chrisleys then had to demand that their own lead attorney do what any competent criminal defense lawyer would have done without being asked. Even then, the motion Anulewicz filed was so narrow that it left all the derivative evidence untouched and said nothing to the court about the fruit-of-the-poisonous-tree connection. This was not zealous advocacy. It was the opposite.

14.    Plaintiffs bring this action to recover the damages flowing directly from Defendants' negligence: the prison sentences they should never have served, the careers and income destroyed, the family separated, the reputation ruined, and the millions spent trying to escape the consequences of their own lawyers' failures. Balch and Chris Anulewicz allowed this to happen. They must answer for it.

## PARTIES

15.    Plaintiff Todd Chrisley is an individual residing in the State of Tennessee.

16.    Plaintiff Julie Chrisley is an individual residing in the State of Tennessee.

17.    Defendant Chris Anulewicz is, on information and belief, an attorney licensed to practice law in the State of Georgia and, at all times relevant to this suit, was a partner at Balch & Bingham. On information and belief, Defendant Anulewicz is an individual residing in the State of Georgia.

18.    Defendant Balch & Bingham LLP is a limited liability partnership engaged in the practice of law with offices in the State of Georgia. Balch & Bingham LLP does not have an office in the State of Tennessee. On information and belief, no partner of Balch & Bingham is domiciled in the State of Tennessee.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists and the amount in controversy exceeds $75,000.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events giving rise to Plaintiffs' claims occurred in this District.

6

## FACTUAL ALLEGATIONS

21.  Plaintiffs were defendants in a federal criminal case in the United States District Court for the Northern District of Georgia, styled *United States v. Todd and Julie Chrisley*, Case No. 1:19-cr-00297 (the "Criminal Case").

22.  Plaintiffs were first indicted in the Criminal Case on August 13, 2019.

23.  Defendant Balch & Bingham, LLP, through Chris Anulewicz, served as trial counsel for Plaintiffs in the Criminal Case.

24.  As Plaintiffs' attorneys, Defendants owed each Plaintiff a duty to provide competent legal representation meeting the standard of care required of a reasonably competent federal criminal defense attorney acting under similar circumstances.

25.  Defendant Anulewicz had no meaningful criminal defense experience before taking on Plaintiffs' representation. Despite this lack of experience, he stepped into the middle of a complex, high-profile federal criminal matter.

26.  During the representation, at a time when Defendant Anulewicz should have been concerned with filing timely motions to protect Plaintiffs' constitutional rights, Anulewicz instead convinced Plaintiffs to invest $75,000 into his brother-in-law's startup food truck business.

7

27.    Defendant Anulewicz facilitated the $75,000 transaction on the Chrisleys' behalf, taking advantage of his position as their attorney while neglecting his duty to zealously advocate for them. Plaintiffs never saw a return on the investment.

*The Illegal Warehouse Search*

28.    Prior to the Criminal Case, the Georgia Department of Revenue ("DOR") unlawfully seized property belonging to Plaintiffs, including furniture, personal effects, and twenty boxes of voluminous documents from a warehouse (the "Warehouse Search") in March 2017.

29.    The DOR seized Plaintiffs' property without a search warrant, after threatening the warehouse property manager that she would be arrested if she did not allow the DOR to seize the property without a search warrant.

30.    The DOR disclosed information about these seized items to federal investigators.

31.    Based on the illegally seized information, federal investigators opened an investigation and subsequently obtained search warrants to seize specific documents and to acquire information contained in Plaintiffs' personal email accounts maintained by AOL and Google.

32.    The U.S. Attorney's Office also requested and obtained evidence via subpoena based on information learned from the illegal Warehouse Search.

33. The derivative evidence obtained by federal investigators as a result of the illegal Warehouse Search included emails, bank records, and financial documents that were obtained based on leads from the illegal search.

34. The illegal Warehouse Search was the initial step in the government's investigation and formed the foundation for virtually all documentary evidence later presented at trial.

*Defendants' Deficient Representation*

35. The government made clear in the Indictment that it intended to introduce some of the seized information and its fruits at trial.

36. On December 20, 2019, Defendants filed a Motion to Suppress Evidence Seized Pursuant to Search Warrants Executed at 4125 Welcome All Road and 1800 Century Blvd NE ("the warehouse motion to suppress"), seeking to exclude the seized documents as illegally obtained by the DOR.

37. The government conceded that the DOR violated Plaintiffs' Fourth Amendment rights through its warrantless seizure of Plaintiffs' property.

38. The federal court recommended that the Defendants' warehouse motion to suppress be granted after "easily find[ing]" that the DOR's warrantless seizure violated Plaintiffs' Fourth Amendment rights.

39. On February 28, 2020, Defendants filed a Motion to Suppress Evidence Seized Pursuant to the Search Warrants for Emails and

Electronically Stored Information ("the electronic evidence motion to suppress").

40. The sole argument in Defendants' electronic evidence motion to suppress was that the language of those search warrants was unreasonably broad.

41. The Defendants' electronic evidence motion to suppress did not argue that the electronic evidence should be suppressed because its seizure originated from the illegal Warehouse Search.

42. This motion to suppress failed to assert that the government would not have investigated and obtained Plaintiffs' emails and other electronic evidence but for the suppressed warehouse documents.

43. This motion to suppress failed to even mention the illegal Warehouse Search.

44. The federal court denied Defendants' electronic evidence motion to suppress, finding that the electronic evidence warrants were not overbroad.

45. In neither motion to suppress did Defendants move to exclude all evidence obtained as a result of the illegal Warehouse Search as "fruit of the poisonous tree," nor did Defendants inform the court that the electronically stored information sought to be suppressed was also fruit of the illegal Warehouse Search.

46. Even after the Court granted the warehouse motion to suppress, Defendants failed to file a timely motion to suppress all other evidence, including the electronic records, as "fruit of the poisonous tree."

47. On March 31, 2022, Defendants filed a "Motion to Require the United States to Establish Admissibility of Suppressed Evidence," but styled it that way because Defendants knew the relevant deadlines had passed.

48. In fact, the motion was actually an untimely motion to suppress, as the Eleventh Circuit found.

49. This motion was filed well after the pretrial deadline and ten days after the motions *in limine* filing deadline.

50. This motion was filed almost two and a half years after Defendants timely filed the warehouse motion to suppress, which the federal court granted.

51. There was no excuse for Defendants' failure to file a timely motion to suppress all evidence derived from the illegal Warehouse Search before the district court's pretrial motions deadline.

52. The trial court and the Eleventh Circuit determined that Defendants' motion was filed past the relevant deadline and accordingly refused to consider the merits of whether the evidence should be excluded.

53. This procedural decision also meant that Plaintiffs could not obtain relief for the Fourth Amendment violation while on direct appeal.

54.    The initial motion to suppress was filed only after an associate at Balch spoke with Plaintiff Todd Chrisley about his concerns that Defendant Anulewicz was not planning to file any such motion at all.

55.    The associate urged Plaintiff Todd Chrisley to demand that Anulewicz file the motion to suppress all evidence derived from the illegal Warehouse Search.

56.    Plaintiffs insisted that a motion to suppress be filed and expected their counsel to do so with diligence and reasonable care, which did not occur.

57.    After Plaintiffs' demand, Defendant Anulewicz filed the motion to suppress evidence seized in the illegal Warehouse Search, but he never moved to suppress derivative evidence from the illegal Warehouse Search. A competent defense lawyer would have done so.

*Causation and Damages*

58.     As a result of Defendants' failure to timely file a motion to suppress all evidence derived from the illegal Warehouse Search, electronic evidence and similar documents were presented at trial.

59.     These documents comprised the crux of the evidence used against the Chrisleys at trial.

60.     Without that evidence, the government would not have had sufficient evidence to support a conviction.

61.     But for Defendants' breach of duty, Plaintiffs would have timely challenged this evidence as fruit of the poisonous tree stemming from the DOR's illegal seizure.

62.     The viability of such a motion is evident from the Court's prior ruling granting suppression of the illegally seized materials and "easily" finding a Fourth Amendment violation, and the clear doctrinal basis for challenging derivative evidence obtained through fruit of the poisonous tree.

63.     The admission of this illegally obtained evidence resulted in both Todd Chrisley and Julie Chrisley being convicted on all counts.

64.     As a direct consequence of the convictions, both Plaintiffs were sent to federal prison, resulting in their separation from each other and their family.

65.     Plaintiffs lost their television show and endorsement deals, resulting in a complete loss of income exceeding $25 million.

66.     Plaintiffs endured severe emotional distress from their incarceration and family separation.

67.     Plaintiffs have suffered permanent and irreparable damage to their personal and professional reputations.

68.     Plaintiffs have incurred substantial legal fees and costs associated with appeals and post-conviction proceedings totaling millions of dollars.

## STATEMENT OF THE CLAIMS

### COUNT I: LEGAL MALPRACTICE
*All Defendants*

69.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

70.     Defendants owed Plaintiffs a professional duty to exercise the degree of care, skill, and diligence commonly exercised by reasonable attorneys under similar circumstances.

71.     Defendants breached their professional duty by failing to timely file a motion to suppress all evidence derived from the illegal Warehouse Search as fruit of the poisonous tree.

72. Defendants' breach constituted a clear deviation from the standard of care, skill, and diligence required of reasonably competent attorneys practicing federal criminal defense law.

73. But for Defendants' breach of duty, Plaintiffs would not have been convicted, as the illegally obtained evidence that formed the basis of their convictions would have been suppressed.

74. As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damages exceeding $25 million, including loss of income, incarceration, emotional distress, reputational harm, and substantial legal fees and costs.

75. Plaintiffs are entitled to full compensatory damages for all losses proximately caused by Defendants' professional negligence.

## COUNT II: BREACH OF CONTRACT
*All Defendants*

76. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

77. The attorney-client relationship was created by, and governed by, a contract for legal services, under which Defendants agreed to represent Plaintiffs in the Criminal Case in exchange for fees and other consideration.

78. The contract was valid, enforceable, and supported by adequate consideration.

15

79.   Implicit in the contract, and an essential term, was Defendants' promise to perform with the care, skill, and diligence ordinarily exercised by attorneys in federal criminal proceedings under similar circumstances.

80.   Defendants also agreed, expressly and impliedly, to provide competent representation and take steps reasonably necessary to protect Plaintiffs' rights, including timely filing and preserving meritorious pretrial motions.

81.   Defendants breached by failing to perform with the requisite care, including failing to timely file a fruit-of-the-poisonous-tree suppression motion.

82.   Defendants further breached via the overbreadth-only electronic-evidence motion and by missing the pretrial/*in limine* deadlines, forfeiting the issue.

83.   Plaintiffs are entitled to recover all damages flowing from the breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.   That a jury of 12 persons be empaneled to try this case;

2.   For compensatory damages in an amount to be determined at trial, but in excess of $25 million;

3.     For pre-judgment and post-judgment interest at the maximum rate allowed by law;

4.     For costs of this action, including reasonable attorneys' fees;

5.     For such other and further relief as the Court deems just and proper.

Respectfully Submitted this 5th day of June, 2026.

*/s/ J. Alex Little*
J. Alex Little
*Pro hac vice* forthcoming
Zachary C. Lawson
*Pro hac vice* forthcoming
Litson PLLC
54 Music Square E. # 300
Nashville, TN 37203
615-985-8205
alex@litson.co
zack@litson.co
Counsels for Plaintiffs

*/s/ Matthew K. Winchester*
Matthew K. Winchester
Georgia Bar No. 399094
Law Offices of Matthew K. Winchester
Garland Law Building
3151 Maple Drive, NE
Atlanta, Georgia 30305
Tel: (678) 517-6894
Email: K.Winchestercb@gmail.com
Local counsel for Plaintiffs

17